IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| P. David Kemp, | ) | |
| | ) | Civil Action No. 6:14-cv-02604-TMC-KFM |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| JHM Enterprises, Inc. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on a motion for summary judgment filed by JHM Enterprises, Inc. ("JHM"). (ECF No. 33). P. David Kemp ("Kemp") filed a response, and JHM filed a reply. (ECF Nos. 41, 45). In accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2)(g), D.S.C., this matter was referred to a magistrate judge for pretrial handling. Now before the court is the magistrate judge's Report and Recommendation ("Report"), recommending that the court deny JHM's motion for summary judgment as to the ADA claims and grant its motion for summary judgment as to the intentional infliction of emotional distress claim. (ECF No. 54). Kemp has filed timely objections to the Report (ECF No. 55) and JHM has responded to those objections (ECF No. 60). JHM has also filed timely objections to the Report (ECF No. 56) and Kemp has responded to those objections (ECF No. 59). Accordingly, the matter is now ripe for review.

The Report has no presumptive weight and the responsibility to make a final determination in this matter remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). In making that determination, the court is charged with conducting a de novo review of those portions of the Report to which either party specifically objects. *See* 28 U.S.C. §

1

636(b)(1).  Then, the court may accept, reject, or modify the Report or recommit the matter to the magistrate judge.  *See id.*

## Background

Kemp brought this action against JHM, alleging violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12112(a), (b)(5)(a) and 12117(a), and a state law claim for intentional infliction of emotional distress. On July 8, 2013, Kemp, who suffers from Type 1 diabetes, began working for JHM as the Corporate Director of Human Resources. (ECF No. 33-18 at 14). On July 10, 2013, Kemp suffered a diabetic episode while traveling on the job for JHM with Daniel Barre ("Barre"), JHM's Regional Director of Operation. (ECF No. 33-18 at 24). On July 11, 2013, Kemp was fired by Jane Brophy ("Brophy") and Sid Wall ("Wall"), the vice presidents of JHM, for his "inappropriate" behavior on the previous day.[1] (ECF No. 33-11).

Kemp alleges that JHM fired him because of his disability after he experienced a diabetic episode while traveling on-the-job for JHM's business, and that JHM failed to provide him a reasonable accommodation. Kemp also alleges that JHM "intentionally engaged in conduct which was extreme and outrageous and which was certain to cause emotional distress" to Kemp. (ECF No. 1). JHM moved for summary judgment, asserting Kemp failed to present sufficient evidence to prove his wrongful termination claim, Kemp failed to request an accommodation prior to his termination to prove his failure to accommodate claim, and the South Carolina Workers' Compensation Act provides the exclusive remedy for any physical or emotional problems from which Kemp allegedly suffered as a result of his termination. (ECF No. 33).

## Standard of Review

---

[1] For a full recitation of the facts, see the Report and Recommendation incorporated *infra*.

Summary judgment is appropriate if, after reviewing the entire record in a case, the court is satisfied that no genuine issues of material fact exist and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the plaintiff.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Issues of fact are "material" only if establishment of such facts might affect the outcome of the lawsuit under the governing substantive law.  *Id*.   All  evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir. 1990).

## Discussion

### I.     The ADA Claims

The ADA prohibits discrimination by covered entities, including private employers, against qualified individuals with a disability. The Fourth Circuit has held that the causation and burden-shifting standards applicable in Title VII cases as set forth in *McDonnell Douglass Corp. v. Green*, 411 U.S. 792 (1973), are also applicable in cases brought pursuant to the ADA "where the defendant disavows any reliance on discriminatory reasons for its adverse employment action." *Ennis v. Nat'l Assoc. of Bus. and Educ. Radio*, 53 F.3d 55, 58 (4th Cir. 1995).

Under the analysis set forth in *McDonnel Douglass*, if Kemp establishes a prima facie case, then the burden shifts to JHM to produce a legitimate, non-discriminatory reason for the termination. *See Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 513 (4th Cir. 2006). If JHM meets this burden, then "the presumption of discrimination created by the prima facie case disappears from the case' and [Kemp] must prove the [JHM's] 'proffered justification is pretextual.'" *Id.* at 514 (*quoting Mereish v. Walker*, 359 F.3d 330, 334 (4th Cir. 2004)).

The Report recommends denying JHM's motion for summary judgment because a reasonable jury could find that Kemp has adequately demonstrated the facts necessary to establish a prima facie case for the wrongful termination claim. Specifically, the Report finds that a reasonable jury could conclude that: (1) Kemp is substantially limited by his diabetes in major life activities of speaking, communicating, and caring for himself, and is thus disabled under the ADA (ECF No. 54-11); (2) Kemp is a qualified individual for the position in question (ECF No. 54-15); and (3) JHM terminated Kemp's employment because of his disability (ECF No. 54-15). By establishing a prima facie case, the burden then shifts to JHM to present a legitimate, non-discriminatory reason for termination. JHM admits that the sole reason for terminating Kemp's employment was his "inappropriate" behavior on July 10, 2013.

The Report further recommended the court to find that Kemp has presented sufficient evidence of pretext to survive summary judgment. Specifically, Kemp presented evidence that (1) the decision-makers knew he had told Barre that he had diabetes and that the symptoms he experienced on July 10th were a result of his low blood sugar (ECF No. 41-13 at 13); (2) the emergency responders indicated that Kemp had suffered a "diabetic episode" at the time of the incident (ECF No. 33-14 at 25); and  (3) the decision-makers did not investigate Kemp's side of the story prior to making the decision to terminate his employment, which according to JHM's president, was not the normal process (ECF No. 41-11 at 2–6).

Having reviewed JHM's objections to the Report on the ADA claims, the court finds that many of the objections are unrelated to the dispositive portions of the Report, and merely restate its claims. *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982) (explaining that *de novo* review is unnecessary in situations when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations.)

However, the court will address each objection it finds to be specific and pertinent to the Report in turn.

### A.    Whether Plaintiff was Disabled under the ADA

JHM objects to the Report's finding that Kemp's diabetes qualifies as a disability under the ADA because: (1) under Fourth Circuit precedent, that determination should be made on a case-by-case basis; and (2) Kemp failed to produce any medical diagnosis, documentation, and/or testimony showing that his diabetes substantially limits one or more of his major life activities.    JHM contends that the Report "erroneously disregarded *Schneider*[2] as well as subsequent rulings from courts within the Fourth Circuit (*Quarles*[3] and *Dunbar*[4]) that reaffirmed the holding in *Schneider* that diabetes is not a *per se* disability in the Fourth Circuit." While JHM is correct that the Fourth Circuit has not definitively held that Type 1 diabetes is a *per se* disability, the court finds that based on the evidence before it, Kemp's Type 1 diabetes meets the ADA Amendment Act's ("ADAAA") definition of disability. Accordingly, this court disagrees with JHM's objection, and finds that the evidence presented is more than sufficient for a reasonable jury to return a verdict for Kemp on this point, particularly given Kemp's diabetic episode on July 10, 2013—several years after January 1, 2009, i.e., the effective date of the ADAAA.

A plaintiff who brings a claim under the ADA for wrongful termination and failure to accommodate must first establish that he is a "qualified individual with a disability." The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C)

---

[2] *See Schneider v. Giant of Maryland, LLC,* 389 Fed. Appx. 263 (4th Cir. 2010).
[3] *See Quarles v. Maryland Department of Human Resources,* C/A No. MJG-13-3553, 2014 WL 6941336 (D. Md. Dec. 5, 2014).
[4] *Dunbar v. Director SCDC Bill Byars; SCDC; and Head Officials of daily operations and procedures in SCDC*, C/A No. 2:11-cv-2243, 2013 WL 667930 (D.S.C. Jan. 30, 2013).

being regarded as having such an impairment." 42 U.S.C. § 12102(2). "An impairment is a disability [under the ADA] if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). "'[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, [and] bending . . .". 42 U.S.C. § 12102(2)(A).

The ADAAA substantially broadened the definition of 'disability' under the law in explicit response to the United States Supreme Court's decisions in *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002), and its predecessor, *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999), in which the ADA's definition of disability was strictly interpreted and created a demanding standard for qualifying as disabled. *See Summers v. Altarum Institute, Corp.*, 740 F.3d 325, 329 (4th Cir. 2014). Under the ADAAA, the "definition of disability shall be construed in favor of broad coverage of individuals"—and, that the term "substantially limits" should be "interpreted consistently with the findings and purposes of the [ADAAA]." 42 U.S.C. § 12102(4)(A)–(B).

The Report addresses the Fourth Circuit's decision in *Schneider*, stating that "*Schnieder* was not decided under the ADAAA, [and that the ADAAA] . . . was intended to make it easier for people with disabilities to obtain protections under the ADA." (ECF No. 54 at 13; *See* 29 C.F.R. § 1630.1(c)(4) (explaining that under the ADAAA, the definition of "disability" should be broadly construed in favor of expansive coverage to the maximum extent permitted by the terms of the ADA)). Rather, *Schneider* was decided under previous law, at a time when the definition of disability was to be narrowly construed.

The Report does not directly address *Dunbar* or Q*uarles*; however, the court finds both cases unpersuasive. In *Quarles*, a district court for the District of Maryland relied on the holding in *Schneider*, and found that the plaintiff's Type 1 diabetes did not qualify as a disability under the ADA. However, the court in *Quarles*, like the Fourth Circuit in *Schneider*, was analyzing whether the plaintiff's diabetes from 2005 qualified as a disability under the ADA — several years before the effective date of the ADAAA. In *Dunbar*, the district court analyzed whether Type 1 diabetes qualified as a disability under the ADA after the effective date of the ADAAA. The court correctly applied the Fourth Circuit's holding in *Schneider,* finding that diabetes is not a *per se* disability under the ADA. However, the court's analysis went further, explaining that the plaintiff's diabetes did not qualify as a disability under the broad interpretation of the definition because the plaintiff presented no other allegations in which the court could make such a finding. *See Dunbar*, 2013 WL 667930 at *3.

This case is distinguishable. Here, Kemp's diabetic episode occurred on July 10, 2013, several years after the effective date of the ADAAA. Furthermore, Kemp provided sufficient evidence for a reasonable jury to conclude that his diabetes constitutes a qualifying disability that substantially impairs a major life activity. For example, Kemp provided medical evidence showing that he has Type 1 diabetes that requires him to take multiple daily injections of insulin, eat at regular intervals, and watch his diet. (ECF No. 41-4, 41-5). He testified that when he has low blood sugar, he sometimes has double vision, perspires profusely, becomes unsteady on his feet, and cannot "put words together." (ECF No. 41-10 at 28). Kemp further testified that having blood sugars that are too high for too long can result in "losing your sight, your fingers fall off and your heart stops working because prolonged high blood sugar is long-term the worst thing to happen to you." (*Id.*). Accordingly, the Report recommended, and the court agrees, that a

reasonable jury could conclude that Kemp is substantially limited by his diabetes in the major life activities of speaking, communicating, and caring for himself, and thus is disabled under the ADA.

**B.    Plaintiff's Claim of Wrongful Discharge under the ADA**

JHM also contends in its motion for summary judgment and objections to the Report that Kemp cannot state a sufficient claim that he was terminated because of his diabetes. To survive summary judgment on his wrongful discharge claim, Kemp must first establish a prima facie case of discrimination by showing: "(1) he was a qualified individual with a disability; (2) he was discharged; (3) he was fulfilling his employer's legitimate expectations at the time of discharge; and (4) the circumstances of his discharge raise a reasonable inference of unlawful discrimination." *Reynolds v. Am. Nat. Red Cross*, 701 F.3d 143, 150 (4th Cir. 2012) (citations omitted) (internal quotation marks omitted).

Neither party disputes that Kemp was discharged, and the court has addressed, *supra*, that Kemp has a disability within the meaning of the ADA. Consequently, this court need only address whether Kemp was fulfilling his employer's legitimate expectations at the time of discharge, and whether the circumstances of Kemp's discharge raise a reasonable inference of unlawful discrimination.

With regard to the third prong, JHM argues that Kemp failed to prove that he met JHM's legitimate expectations at the time of his termination. Specifically, JHM argues that Kemp's "alleged disability did not excuse his misconduct and aberrant behavior" and notes that JHM requires employees "to project 'a favorable image of JHM Hotels to the public at all times' and to maintain 'a clean and neat appearance at all times.'" (ECF No. 33-1 at 12). JHM contends that the Report: (1) "erroneously cited Plaintiff's accommodations from previous employers . . . even

though prior accommodations are irrelevant to this analysis;" (2) "erroneously stated that no guests were disturbed by Plaintiff's misconduct;" and (3) "inexplicably disregarded [*King v.*] *Rumsfield* [328 F.3d 145 (4th Cir. 2003)] and erroneously accepted Plaintiff's own self-serving, uncorroborated opinion that a causal connection somehow existed, without any medical testimony or documentation at all." (ECF No. 56 at 15–16, n. 19–20).

The court disagrees with JHM's objections to the Report. First, the Report acknowledged Kemp's previous accommodations during its analysis simply to show that Kemp has, with reasonable accommodations, successfully held similar positions in the past and is a qualified individual for the position in question. Second, after a careful review of the record, the court finds that Rogers, the General Manager of the Charleston Marriot, testified that Kemp was not disturbing any of the hotel guests on July 10, 2013. (ECF No. 33-17 at 18). Therefore, JHM's assertion that the Report "erroneously stated that no guests were disturbed by Plaintiff's misconduct" is an inaccurate portrayal of the record. Lastly, in *Rumsfeld*, the Fourth Circuit held that the plaintiff could not establish he was meeting his employer's legitimate expectations at the time the employer took adverse employment action because the plaintiff could not rely on his own claim of satisfactory job performance and the testimony of his co-employees to support his claim. 328 F.3d at 149. However, in this case, Kemp has provided two medical reports from his doctor, which document that he has Type 1 diabetes that requires daily insulin injections. (*See* ECF No. 41-4, 41-5). Additionally, Barre and Wall both admit that they were aware that the medical responders determined that Kemp had a diabetic episode on July 10, 2013. (ECF No. 33-16 at 25, 28; ECF 33-14 at 13). Therefore, unlike the plaintiff in *Rumsfeld*, Kemp is not simply relying on his own uncorroborated evidence to support his claim. Accordingly, the court agrees with the Report, which recommended the court find that that Kemp presented sufficient evidence

in which a reasonable jury could conclude he was qualified for the position in question and was meeting the employer's legitimate expectations.

With regard to the fourth prong, JHM states that Wall and Brophy, the individuals who decided to terminate Kemp's employment, "did not know that he was disabled, as defined by the ADA, or that he needed an accommodation." (ECF No. 33-1 at 16). The Report finds, and this court agrees, that there is a more than ample question of material fact as to whether this was actually the case, given that: (1) there is evidence and testimony from those who were involved in the decision to terminate, which suggests that the decision-makers were aware that Kemp was a diabetic; and (2) the incident in question had been medically determined to have been related to his diabetes by the responding emergency medical providers who arrived at the scene. For example, Wall testified that prior to the termination meeting, he knew that Kemp said he had diabetes and had an episode. (*See* ECF No. 41-13 at 13). He further testified that prior to the meeting, he was aware that the medical responders had concluded that Kemp had suffered a low blood sugar episode. (*Id.* at 18.) Wall also testified that it would not be appropriate to terminate a diabetic who had a diabetic episode, but they "weren't terminating Mr. Kemp because of a diabetic episode. We were terminating Mr. Kemp for unprofessional behavior in the workplace." (*Id.* at 14.) Furthermore, JHM's president, Rama, testified that the normal process in such a situation would be for Human Resources to investigate the incident and get both sides of the story, which did not occur here. (ECF No. 41-11 at 2–6). Without delving further into the record, it is apparent that such testimony and facts are more than sufficient for Kemp to survive a motion for summary judgment on this question.

### C.    Plaintiff's Failure to Accommodate under the ADA

Discrimination under the ADA includes a failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee," and "denying employment opportunities to a job applicant or employee" where the denial of the employment opportunity is based on the need "to make reasonable accommodation."   42 U.S.C. §§ 12102(2), 1211(b)(5)(A).  In a failure to accommodate case, the plaintiff must show "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . .; and (4) that the [employer] refused to make such accommodations." *Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 n.11 (4th Cir. 2001) (*quoting Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir. 1999)). The court has addressed, *supra*, that Kemp has a disability within the meaning of the ADA, and that there is sufficient evidence to support a finding that JHM had notice of his disability prior to its decision to terminate Kemp. Furthermore, after a review of the record, the Court finds there is sufficient evidence to conclude that Kemp could perform the essential functions of the position with reasonable accommodation. Consequently, the court need only address whether JHM refused to make such accommodations.

JHM contends that Kemp failed to present sufficient evidence to meet the fourth prong, because Kemp "never requested an accommodation until after he learned of his termination, thereby precluding him from proving that JHM refused to accommodate him." (ECF No. 56 at 21). Additionally, JHM argues that the Report "erroneously disregarded" *Halpern v. Wake Forest University Health Sciences*, 669 F.3d 454 (4th Cir. 2012), and *Karoue v. Blue Cross Blue Shield of South Carolina*, C/A No. 3:13-cv-01844, 2014 WL 5810321 (D.S.C. Nov. 7, 2014).

11

The Fourth Circuit recently stated in a failure to accommodate case that, "liability for failure to engage in an interactive process depends on a finding that, had a good faith interactive process occurred, the parties could have found a reasonable accommodation that would enable the disabled person to perform the job's essential functions." *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 347 (4th Cir. 2013) (*citing Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 91 (1st Cir. 2012)). Given that the timing of Kemp's start of employment, his low blood sugar episode, JHM's learning of Kemp's disability, and the termination meeting in which Kemp requested an accommodation are all compressed into a four day period, the court agrees with the Report that a jury could reasonably find that JHM failed to assert a good faith effort to engage in the interactive process.

Furthermore, the court finds the Report accurately summarizes the law, and that neither *Halpern* nor *Karoue* are persuasive in this case. In *Halpern*, the Fourth Circuit held that an employer has no legal duty to engage in the interactive process after an employee has engaged in misconduct. 669 F.3d at 465–66. However, by the time the plaintiff in *Halpern* requested an accommodation, he had already engaged in numerous unprofessional acts over a long period of time that warranted his dismissal. *Id.* at 465. Accordingly, the Fourth Circuit concluded that the plaintiff's request for an accommodation was untimely because he "sought not a disability accommodation, but 'a second chance to better control [his] treatable medical condition.'" 669 F.3d at 465 (*citing Hill v. Kan. City Area Transp. Auth.*, 181 F.3d 891, 894 (8th Cir. 1999)). In *Karoue*, a District Court in this district held that the "[defendant] had no duty to provide a reasonable accommodation or even engage in the interactive process until the plaintiff specifically requested an accommodation that she tied to the stated disability." 2014 WL 5810321, at *10. Given that Kemp arguably did not have sufficient time or opportunity to

request an accommodation, the court finds significant factual differences between *Halpern*, *Karoue*, and this case, and is unwilling to extend the holdings in those cases to foreclose Kemp's ability to proceed past summary judgment.

Accordingly, the court agrees with the Report, and finds that a reasonable jury could find Kemp adequately demonstrated the facts necessary to prevail on a failure to accommodate claim. Therefore, the court denies defendant's motion for summary judgment as to the ADA claims.

### II.     Plaintiff's State Law Intentional Infliction of Emotional Distress Claim

In JHM's motion, it also moves the court to grant summary judgment for the intentional infliction of emotional distress cause of action on the basis of the exclusivity provision of the South Carolina Workers Compensation Act, as set forth in S.C. Code Ann. § 42-1-540, which provides, in pertinent part:

> The rights and remedies granted by this Title to an employee when he and his employer have accepted the provisions of this Title, respectively, to pay and accept compensation on account of personal injury or death by accident, shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents or next of kin as against his employer, at common law or otherwise, on account of such injury, loss of service or death.

The South Carolina Supreme Court has held that causes of action for intentional infliction of emotional distress (outrage) constitute personal injuries within the scope of the Act. *Loges v. Mack Trucks*, 417 S.E.2d 538, 539 (S.C. 1992).

As noted by the magistrate judge, South Carolina recognizes the following four exceptions to the exclusivity rule set forth in the Act: (1) where the injury results from the act of a subcontractor who is not the injured person's direct employer; (2) where the injury is not accidental but rather results from the intentional act of the employer or its alter ego; (3) where the tort is slander and the injury is to reputation; or (4) where the Act specifically excludes certain occupations. *Cason v. Duke Energy Corp.*, 560 S.E.2d 891, 893 (S.C. 2002). Kemp

asserts his claim for intentional infliction of emotional distress meets the exception to the exclusivity rule because it is based on the intentional conduct of Brophy and Wall, and that Brophy and Wall are the "alter ego" of JHM.

Both parties cite to *Dickert v. Metropolitan Life Insurance Co.*, where the South Carolina Supreme Court refused to extend the definition of "alter ego" to supervisory employees such as an office manager and held that "only dominant corporate owners and officers" may constitute alter egos. 428 S.E.2d 700, 701 (S.C. 1993). The court in *Dickert* explained that the key inquiry is whether the employees who intentionally inflicted emotional distress can genuinely be characterized as the alter ego of the corporation. *See Bryant v. INA Bearing Co., Inc.,* C/A No. 93-1663, 1993 WL 540274, at *2 (4th Cir. 1993) (discussing the inquiry required after the South Carolina Supreme Court's decision in *Dickert II* )).  Additionally, "it is South Carolina's policy to resolve jurisdictional doubts in favor of the inclusion of employers and employees under the Workers' Compensation Act," *Edens v. Bellini*, 597 S.E.2d 863, 870 (S.C Ct. App. 2004), and "any exceptions to workers' compensation coverage must be narrowly construed." *Peay v. U.S. Silica Co.*, 437 S.E.2d 64, 65 (S.C 1993).

In the case at bar, the court agrees with the recommendation set forth in the Report with regard to the cause of action for intentional infliction of emotional distress. The Report recommends the court grant JHM's motion for summary judgment on this claim, finding that "the plaintiff presented no evidence that either of these persons are the 'alter ego' of the defendant as defined in *Dickert*." (ECF No. 54 at 22). Kemp objects to the Report, arguing that Brophy and Wall are the "alter ego" of JHM because: (1) Wall interchangeably referred to himself and JHM during his deposition and the deposition he gave on behalf of JHM pursuant to Federal Rule of Civil Procedure 30(b)(6); (2) Wall and Brophy were the primary decision makers

14

in hiring and firing Kemp; (3) Wall communicated Kemp's job offer and termination; and (4) Wall and Brophy's position as vice presidents of JHM rises above the level of a supervisory employee.

In support of his argument, Kemp cites no authority for the proposition that being the primary decision-maker in a particular case, communicating on behalf of a corporation, or taking some action on behalf of the corporation makes an employee the "alter ego" of the corporation. Therefore, the court agrees with the Report that Wall and Brophy were simply acting in their capacity as the vice presidents of JHM, which is insufficient to support a finding that Wall and Brophy should be considered the alter ego of JHM. Therefore, the court grants JHM's motion for summary judgement on the intentional infliction of emotional distress claim.

## Conclusion

After a thorough review of the record in this case, the Court agrees with the Report's analysis and incorporates it herein. Accordingly, the motion for summary judgment (ECF No. 33) is **GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED.**

Anderson, South Carolina                          s/Timothy M. Cain
March 7, 2016                                      United States District Judge